IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FREDERICK RAHN, | : | CIVIL ACTION NO. |
| | : | 1:15-CV-4485-ODE-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A. and BANK | : | |
| OF AMERICAN CORPORATION, | : | **NON-FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff sues Bank of America, N.A., and Bank of America Corporation (collectively "Bank of America"),[1] for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), relating to Bank of America's allegedly erroneous attempts to collect on a mortgage debt, and failure to provide information about Plaintiff's mortgage account. The case is before the undersigned on Defendants' Motion to Dismiss the First Amended Complaint [8], which the undersigned **RECOMMENDS** be **GRANTED IN PART AND DENIED**

---

[1] Defendant notes in a footnote that Bank of America Corporation was sued improperly and reserves the right to raise that defense at a later time, but does not currently seek dismissal on that basis. Def. Br. [8-1] at n.1. Otherwise, the parties do not differentiate between Bank of America, N.A. and Bank of America Corporation for purposes of the Motion to Dismiss. For purposes of this report and recommendation, therefore, the Court will collectively treat both named Defendants as "Bank of America."

**IN PART**.[2] Specifically, the Court recommends that the motion be granted as to Count Two–the RESPA claim–and that this claim be dismissed. But the Court recommends that the motion to dismiss Count One–the TCPA claim–and Count Three–a remedial claim for attorney's fees–be denied, and that these claims proceed.

## I.   THE COMPLAINT

Plaintiff owns a property in Duluth, Georgia (the "Property"), as to which Defendant serviced a mortgage loan. Am. Compl. [5] ¶ 6. In early 2011, Plaintiff became unable to pay the loan, which went into delinquent status. *Id.* ¶¶ 8, 9. As his account became increasingly delinquent, he began receiving numerous collections letters and phone calls from Defendant, including on his personal wireless number that he had never provided to Defendant. *Id.* ¶¶ 7-9. Several of these calls were on nights and weekends. *Id.*

In May 2011, Plaintiff applied for a loan modification with Defendant. *Id.* He still received collections calls throughout the application process. *Id.* ¶ 11. Plaintiff was approved for a modification in August 2011, resulting in a lower monthly payment, and began complying with all terms of the modification in September 2011.

---

[2] The undersigned recommends that an earlier-filed Motion to Dismiss [3]–which was directed at the original, pre-amended complaint–be **DENIED** as **MOOT**. The original complaint has been amended, and therefore is no longer the operative pleading in the case.

*Id.* ¶ 13. Nevertheless, Defendant kept sending letters and making collections calls, including on his wireless number, three to five times per week, claiming that Plaintiff's payments were insufficient, apparently ignoring or disregarding the modification. *Id.* ¶ 14. Plaintiff referred the calling agents to the existence of the modification agreement and instructed them not to call his personal wireless number. *Id.* This caused ongoing anxiety and distress, which Plaintiff (who was 70 years old) alleges led to a dangerous blood pressure problem and a lengthy bout with pneumonia. *Id.* ¶ 16. Nevertheless, all throughout this time, Defendant continued to call Plaintiff on his personal wireless number, "using autodialing and prerecordings," and continued to send letters erroneously demanding monthly charges in excess of the modification agreement. *Id.* ¶ 17.

Plaintiff visited his local Bank of America branch seeking help, and the staff immediately acknowledged Bank of America's error. *Id.* ¶ 18. "At Rahn's direction," staff members at the Bank of America branch office generated emails and other written correspondence within the Bank, bearing Plaintiff's name and account number, explaining the errors and requesting information on how the errors should be corrected. *Id.* ¶ 19. These efforts were unsuccessful, as he continued to receive the harassing calls. *Id.* ¶ 20. At some point, Plaintiff was told that the collection agents used an automated system to generate the numbers to be called, so there was nothing

that could be done about stopping them, and he would have to just ignore the harassment. *Id.* ¶ 22. Defendant placed about three to five automated collections calls to Plaintiff's wireless number from September 2011 until late October 2013. *Id.* ¶ 24. At some point, Plaintiff obtained a reverse mortgage at significant financial cost, so that he could retire his debt to Bank of America and not have to endure these harassing calls. *Id.* ¶¶ 26, 27.

Plaintiff brings three claims – Count One, for violations of the TCPA, based on the repeated, nonconsensual, automated calls to his personal wireless number; Count Two, for violations of the RESPA, based on Defendant's failure to properly respond to the emails and other written requests for information presented by local Bank of America staff members on Plaintiff's behalf; and Count Three, for attorney's fees.

## II.   DISCUSSION

### A.   *Standard on a Motion to Dismiss*

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (other citation and modification omitted).

B.     *Statute of Limitations*

Defendant's first argument is that the statutes of limitations applicable to the TCPA and RESPA bar this lawsuit, which was filed on December 1, 2015. RESPA has a three-year statute of limitations, which begins running when the violation occurs. *See* 12 U.S.C. § 2614. TCPA does not have an express statute of limitations,

so therefore the default four-year statute of limitations for federal statutes codified in 28 U.S.C. § 1658 applies.

According to Defendant's argument, "[b]ased upon Plaintiff's sparse factual allegations, it appears that the purported phone calls may have occurred during the time of his delinquency on the loan in 2011, prior to receiving the Loan Modification in August 2011." Def. Br. [8-1] at 8. Defendant also points out that Plaintiff did not allege any dates of any written correspondence with Defendant about the servicing of the loan but that, "it appears that Plaintiff may have sent a [Qualified Written Request] during the period of his delinquency prior to the Loan Modification in August 2011." *Id.* Therefore, because conduct occurring in or before August 2011 preceded the filing of the Complaint in December 2015 by over four years, Defendant argues that both the TCPA and RESPA claims are untimely.

This argument deserves short shrift at this juncture in the case.  Generally, a statute of limitations affirmative defense can only be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) where the Complaint "shows on its face that the limitations period has run." *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982). Here, Defendant complains that Plaintiff has not pleaded the specific dates on which he received the allegedly harassing calls or in which he caused written requests to be made to Defendant. But while the dates of these events

may relate to an affirmative defense of untimeliness, the dates are not themselves necessary elements of a TCPA or RESPA claim. Thus, Defendant has not established that Plaintiff is required to plead dates with more specificity. Otherwise, the lack of precision as to the dates of the violations requires denial of the statute of limitations argument. By definition, if it is unclear when these events happened, it cannot be said that the Complaint affirmatively "shows on its face" that the December 1, 2015 filing was untimely.

Moreover, Defendant's argument does not fairly address the allegations. The Complaint does *not* argue that the harassing calls all occurred during the period of "delinquency," before August 2011. To the contrary, the Complaint specifically alleges that Plaintiff received three to five automated calls on his personal wireless number until "late October 2013." Am. Compl. [5] ¶ 24. Applying the four-year statute of limitations, Plaintiff could sue for violations occurring in October 2013 as late as October 2017. Perhaps Plaintiff may one day be limited in recovering for only those violations that occurred within four years of the filing of the Complaint. But that possibility–which is a question for another day–is no basis to dismiss the claim. The Complaint specifically alleges TCPA violations within the limitations period–or at least does not "on its face" definitely show that all alleged violations were untimely. Therefore, the statute of limitations argument as to Count One fails.

The same is true with regard to Count Two. The Amended Complaint does not allege the dates of any written correspondence with Defendant, although it is clear that the emails considered to be alleged Qualified Written Requests occurred *after* the loan modification. Indeed, the entire gist of this correspondence was to explain Defendant's error in seeking excessively high monthly payments after the modification. Therefore, because the Complaint does not affirmatively show the untimeliness of this conduct on its face, the statute of limitations argument as to Count Two fails as well.

C.     *Failure To State A Claim As To The TCPA (Count One)*

The elements of a TCPA violation are that Defendant (i) made calls to a number assigned to one of several enumerated types of services, including wireless cellular services; (ii) using an automatic telephone dialing system, or pre-recorded or artificial voice, (iii) without the prior consent of the called party. *See Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. Feb. 11, 2011); 47 U.S.C. § 227(b)(1)(A).

Defendant first argues that Plaintiff has failed to adequately plead the use of an automatic telephone dialing system. Defendant cites several cases for the proposition that a Complaint cannot just conclusorily parrot the elements of the statute by stating, without factual support, that the Defendant used an "automatic

telephone dialing system." *See* Def. Br. [8-1] at 10-11. Again, this argument ignores the substance of Plaintiff's allegations. Plaintiff does not just assert the use of an automatic telephone dialing system without providing any factual support for that conclusion. Rather, Plaintiff alleges that he was *specifically told by agents of Bank of America* that the calls to him were being generated by an automatic calling system, and that for some reason these automated calls could not easily be stopped. Am. Compl. [5] ¶ 22. This specific factual allegation easily passes the notice pleading standards of Rule 8, even as elucidated by *Iqbal* and *Twombley*.[3]

Moreover, Plaintiff also specifically alleges that he received harassing calls with "prerecordings." *Id.* ¶ 17. This allegation is somewhat different than merely alleging the use of an "automatic dialing system." Arguably, as Defendant's cases discuss, the label "automatic telephone dialing system" is a legal conclusion because this is a somewhat complex statutorily-defined phrase. Also, generally, a recipient of

_____

[3] It is not clear whether Defendant separately argues that because Plaintiff alleges that he conversed with live collections agents and told them to stop calling, these necessarily were not automatic calls. *See* Def. Br. [8-1] at 14. To the extent Defendant asserts this argument, it fails. Just because the call involved a live human being does not mean that the call was manually dialed. Indeed, the statute separately forbids nonconsensual automatic *or* prerecorded *or* artificial calling. In other words, the statute contemplates that calls can be automatically dialed but still involve a live human caller.

a call has no way of knowing whether a particular call was generated by a system meeting the elements of this legal definition.

But for someone to say that he received a "prerecorded" call is fundamentally different, and does not evoke complex statutory definitions or legal analysis. When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message. Indeed, around any election time, just about any American not living totally off the grid likely receives several obviously pre-recorded telephone calls a day. Thus, that Plaintiff states he received calls containing "prerecordings" is a factual allegation for purposes of the pleading standards, and not a bare legal conclusion. Accordingly, the allegation must be accepted as true, and therefore separately establishes the necessary element of this claim.

Defendant further argues that dismissal is warranted because it had a prior business relationship with Plaintiff at the time the calls were made. *See* Def. Br. [8-1] at 14. This is inapt, as the only cases that Defendant cites apply to a different section of the TCPA than is applicable here, specifically, § 227(b)(1)(B), which relates to calls to "residential" telephone lines. *See id.* (citing *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011); *Sardinas v. Geithner*, 2:10-CVB-501JCM, 2010 WL 2696626, at *3 (D. Nev. July 6, 2010)). Plaintiff, by contrast, sues under

§ 227(b)(1)(A), which prohibits certain calls to numbers assigned to providers of various types of mobile services including cellular services. The difference is important because, as Plaintiff points out in his response brief and as Defendant fails to address in his reply, the "prior business relationship" exemption historically applied only to liability under § 227(b)(1)(B), the "residential line" provision, and not to § 227(b)(1)(A), the cellular line provision. And even that exemption is no longer present in the current version of the regulation.

The prior business relationship exemption emanated from the language of § 227(b)(1)(B), which makes it unlawful "to initiate any telephone call *to any residential telephone line* using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for business purposes or is exempted by rule or order of the [Federal Communications Commission ('FCC.')]." 47 U.S.C. § 227(b)(1)(B) (emphasis added). FCC regulations that were in place *through October 15, 2013*, exempted from this prohibition, among other things, "any telephone call *to any residential line* . . . ." that "is made to any person with whom the caller has an established business relationship at the time the call is made . . . ." 47 C.F.R. § 64.1200(a)(2)(iv) (2008) (emphasis added). Notably, the current version of this regulation, effective as of October 16, 2013, lacks this particular exemption. *See* 47 C.F.R. § 64.1200.

But, regardless, the regulatory exemption on its face only applied to calls to *residential lines*, and only applied to lawsuits under the statutory subsection relating to calls *to residential lines*, that is, § 227(b)(1)(B). The statute clearly differentiates between calls to residential lines (covered by § 227(b)(1)(B)) and calls to cellular and other types of mobile lines (§ 227(b)(1)(A)), as is applicable here. Defendant cites no authority establishing that any relevant exemption for a prior business relationship applies to lawsuits under § 227(b)(1)(A), and as explained above, the authority cited by Defendant shows otherwise. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250-51 (11th Cir. 2014) (noting that the former business relationship exception under 47 C.F.R. § 64.1200(a)(2)(iv) did not apply to lawsuits relating to mobile calls brought under § 227(b)(1)(A) because the statute "does not authorize rulemaking with regard to 47 U.S.C. § 227(b)(1)(A)(iii)")[4].

―――――――――――――――――

[4] Notably, Defendant bothered to file a reply brief in support of its motion to dismiss but, frustratingly, did nothing other than regurgitate its cursory argument on the "prior business relationship" exemption, largely if not entirely verbatim from its opening brief. Defendant did not address or even acknowledge Plaintiff's specific statutory argument that this exemption never applied to lawsuits involving mobile calls under § 227(b)(1)(A). Reply briefs can be extremely helpful to the Court, but only where they actually address the arguments made in response and not just repeat the original brief. When a reply just repeats an original brief, it becomes a waste of judicial resources and a frustration to the Court. The Court takes Defendant's cut-and-paste reply effort as an indication that Defendant has no response or opposition to Plaintiff's statutory argument.

Defendant also argues that Plaintiff failed to allege that he revoked his prior express consent. Defendant points out that Plaintiff specifically alleged speaking with Bank of America representatives as part of the loan modification application process, which according to Defendant "clearly indicat[ed] his consent to be contacted," and yet does not allege ever revoking that consent. *See* Def. Reply. Br. [8-1] at 14. If true, unrevoked prior consent would require dismissal, since § 227(b)(1)(A) exempts from its prohibition calls made "with the prior express consent of the called party."

Defendant's consent argument is meritless, however. Plaintiff does not allege that he ever consented to any calls to his wireless number, and therefore was not under an obligation to allege that he revoked that consent. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) (indicating that express prior consent is an affirmative defense, and that the lack of revocation of consent need not be specifically alleged in the Complaint), *overruled on other grounds*, 755 F.3d 1265 (11th Cir. 2014). Nevertheless, the Complaint includes sufficient factual allegations to support the lack of consent. The Complaint expressly alleges that Plaintiff never provided his wireless number to Defendant, and that Plaintiff told Defendant's agents to stop calling him on that number when the harassing conduct began. Am. Compl. [5] ¶¶ 7-9, 14. To the extent any consent could have been previously implied–which is difficult to discern when Plaintiff never

13

provided the telephone number in question to Defendant–that consent was clearly revoked as of when Plaintiff demanded that the calls to his wireless number cease. *See Osorio*, 746 F.3d at 1255 ("in the absence of any contractual restriction to the contrary, [Plaintiff was] free to orally revoke any consent previously given to [Defendant] to call [Plaintiff's wireless number] . . . .")[5]

Because Defendant demonstrates no pleading insufficiencies with regard to the TCPA claim (Count One), the motion to dismiss as to that claim should be **DENIED**.

D.     *Failure To State A Claim As To RESPA (Count Two)*

Plaintiff's RESPA claim is based on 12 U.S.C. § 2605(e), which governs the duties of loan servicers to respond to borrower inquiries. Specifically, RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") from a borrower that meets certain requirements and that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *see also* 24 C.F.R. § 3500.21(e).

"RESPA does not require a servicer to respond to any question that a borrower may ask–no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). Rather, as noted, servicers are required only to respond to inquiries relating to *servicing* of the loan. Congress

---

[5] This is another area in which Defendant's reply is just a cut-and-paste effort, and does not attempt to address the arguments actually made by Plaintiff in response.

14

specifically defined "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA does not require servicers to answer inquiries on other topics. *See Liggion v. Branch Banking and Trust*, Civil Action No. 1:11-cv-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR."). The servicer is obliged to take certain action in response to a valid QWR, including conducting any necessary investigation, making appropriate corrections in the borrower's account, and timely informing the borrower of those corrections or the reasons why corrections were not made. *See* 12 U.S.C. § 2605(e)(2).

Thus, in order to state a claim for a violation of this section of RESPA, 12 U.S.C. § 2605(e), a plaintiff must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within a statutory deadline, and (4) the plaintiff is entitled to actual or statutory damages. 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605).

Defendant, among other dismissal arguments, argues that Plaintiff does not allege that he sent any valid QWRs to Defendant. Plaintiff does not claim that he sent any written correspondence at all to Defendant or anyone affiliated with Defendant. His claim, rather, is that he personally visited a Bank of America branch office, *orally* explained his problems, causing local bank employees to send emails and make other written entries in company records memorializing Plaintiff's inquiries and complaints. Thus, what Plaintiff characterizes as QWRs are the emails written and transmitted *by Bank of America employees to other Bank of America employees* and/or other notes maintained *in Bank of America's files*. Defendant argues that this material does not constitute "qualified written requests" by the borrower within the meaning of 12 U.S.C. § 2605. The Court agrees.

The statute itself states that–to trigger duties under § 2605(e)(2)–a QWR must be received "from the borrower (or an agent of the borrower)." 12 U.S.C. § 2605(e)(1). Here, the Complaint does not allege that Defendant received anything in writing *from* Plaintiff or any agent of Plaintiff's. Rather, Plaintiff made an *oral* inquiry, later reduced to writing, not by Plaintiff or any agent of his, but rather by the Defendant's employees. Plaintiff cites no authority extending the notion of a QWR to such a circumstance. On its face, this scenario falls outside of the plain statutory language.

Plaintiff does not argue that the Bank of America branch employees were acting as his "agent" in writing and transmitting written inquiries. Clearly such an allegation would be meritless. An agency relationship exists where the principal has "the right to control the [agent's] time and manner of executing the work." *Pizza K, Inc. v. Santagala*, 547 S.E.2d 405, 406 (Ga. Ct. App. 2001). "Where an agency relationship exists, the agent has a fiduciary duty to his principal." *Wright v. Apartment Inv. & Mgmt. Co.*, 726 S.E.2d 779, 786 (Ga. Ct. App. 2012). "It is well-settled under Georgia law that no fiduciary relationship exists between a borrower and a lender or its agent." *Phillips v. Ocwen Loan Servicing, LLC*, No. 1:12-CV-3861, 2013 WL 4854760, at *7 (N.D. Ga. Sept. 11, 2013). The bank branch employees may very well have been doing what they could to assist a customer. But

17

on these facts, the bank employees were agents of their *employer*–that is, *Defendant*–and were not also acting as agents of Plaintiff. Plaintiff does not show that he could direct or instruct these employees or that he was speaking to them in any capacity other than as a borrower speaking to his lender/servicer.[6]

Applying the QWR to the facts here would also substantially expand the reach of the statute into all manner of oral communications. A borrower's oral complaints or questions–in person or on the telephone–may frequently result in a bank employee making a notation in an internal database or sending an email or other communication to a fellow employee. For that sort of communication to be considered a QWR within the meaning of § 2605 could effectively sweep in vast numbers of merely oral calls or complaints. This cannot be consistent with Congress's clear intention to limit this obligation to *written* inquires from the borrower or the borrower's agent.

---

[6] The viability of Plaintiff's RESPA claim is not improved by Plaintiff's allegation that Bank of America employees sent internal communications to other bank employees "at Rahn's direction." Am. Compl. [5] ¶ 19. It remains that Plaintiff's communications with the Bank were oral. That Bank employees sent internal notes to other Bank employees–whether Plaintiff asked them to do so or not–do not constitute written inquiries received by Defendant "from the borrower (or an agent of the borrower)." 12 U.S.C. § 2605(e)(1)(A).

Thus, Plaintiff fails to state a claim that Defendant failed to properly respond to a qualified written request under 12 U.S.C. § 2605(e), and Count Two should be **DISMISSED**.

E.     *Count Three (Attorney's Fees)*

The Amended Complaint includes a separate, stand-alone claim for attorney's fees, although derivative to his substantive claims under the TCPA and RESPA. Defendant argues that this claim should be dismissed because Plaintiff's underlying claims fail. As the Court disagrees with Defendant as to the viability of the TCPA claim, the Court must also disagree with this argument for dismissal of the fees claim. Defendant next argues that Count Three should be dismissed because it is not an independent cause of action under Georgia law, but rather a remedy, citing *Fuller v. Home Depot Servs., LLC*, 2007 WL 2345257, at *9 (N.D. Ga. Aug. 14, 2007). This of course is a somewhat academic argument, because whether Plaintiff's claim for fees is treated as a separate claim or simply as a possible remedy for a substantive claim, the result at trial or summary judgment would largely be the same.

In any event, courts have permitted the assertion of a separate claim for attorney's fees under Georgia law, as long as the claim is brought in connection with a separate substantive claim for relief. *See Tri-State Consumer Ins. Co., Inc. v. LexisNexis Risk Solutions, Inc.*, 858 F. Supp. 2d 1359, 1371 (N.D. Ga. 2012). The

*Fuller* case, relied upon by Defendants, does not say otherwise. That case does not appear to discuss a claim for attorney's fees at all but rather a claim for punitive damages, which was dismissed because all of the substantive claims upon which it was premised were dismissed. That would not be the case here, pursuant to the undersigned's recommendations. Therefore, the motion to dismiss as to Count Three should be **DENIED**.

## III.   CONCLUSION

Accordingly, the Court **RECOMMENDS** that Defendants' original Motion to Dismiss [3] be **DENIED** as moot, and that Defendants' second Motion to Dismiss [8] be **GRANTED IN PART**–specifically that Count Two (RESPA) should be **DISMISSED WITH PREJUDICE**–and otherwise **DENIED.**

**IT IS SO RECOMMENDED** this 23rd day of June, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE